OPINION
{¶ 1} The Renos are appealing the judgment of the Montgomery County Common Pleas Court, which granted summary judgment on their claims against the defendants.
 {¶ 2} Jo Anne and Joseph Reno are residents of the City of Centerville (hereinafter "City"). Donald Creech was the City's zoning inspector. The city manager of Centerville is Gregory Horn, and Jesse K. Lightle is his assistant. Jay Newberry is the prosecutor for the City. The City had received several complaints from the Renos' neighbors that they were operating a business out of their home in violation of city zoning provisions. The business known as "Marine Solutions," consists of a retail aquarium supply store, which includes keeping fish in stock. The business requires heavy truck traffic to keep it stocked and customers visiting the store, a converted garage at the Renos' residence, during its 7:00 p.m. to 9:00 p.m., Monday through Friday, hours of operation. The City, Creech, Horn, Lightle, and Newberry took several actions as a result of these complaints. The Renos have filed this suit against the City, Creech, Horn, Lightle, and Newberry based on the actions they took in response to the complaints.
 {¶ 3} Specifically, the Renos allege that Creech trespassed on their property without permission, authority, or a valid search warrant. The Renos assert that Creech and Newberry conspired to commit a trespass and to deprive the Renos of their constitutional rights. Additionally, the Renos assert that Newberry and Creech did in fact deprive the Renos of a right guaranteed by the Ohio Constitution. The Renos also assert that their right of privacy was violated by Creech, Horn, and Lightle improperly accessing their tax records without authority. Finally, the Renos allege that all of the Defendants' actions violated the public policy of Ohio.
 {¶ 4} Creech's involvement in the underlying case originated when he received a complaint from one of Renos' neighbors in April of 2001. He received another complaint in July of 2001. Creech discussed the matter with Mr. Reno and with the prosecutor, Newberry, on multiple occasions throughout the following year. Additionally, Creech asked the complaining neighbor to continue to observe the Renos' property and to create a "log" of the traffic activity that occurred.
 {¶ 5} In June of 2002, the Renos allege Creech trespassed on their property. On June 4, 2002, Creech was, at least, near the Renos' property after he received a call from a police officer that a semi truck was delivering materials to the Renos. Creech asserts that he never entered the property on this date. However, Creech did return to the property on June 5, 2002 without a search warrant and entered the property and took photographs. Also on the June 5th occurrence, Creech was told to leave the property by a Mr. Huffer, who was unloading supplies from a truck, but refused to leave.
 {¶ 6} Mrs. Reno told a different version of the events of June 4th and 5th. Mrs. Reno stated that on June 4th, she found Creech in her home, specifically in the room out of which the fish operation was run. Huffer was present on this day and had asked Creech to leave. According to Mrs. Reno, Creech told her that she and her husband were "running an illegal business" and that he was "going to take [them] to court."
 {¶ 7} Newberry is the prosecutor for the City and his involvement in the case began on August 2, 2001 when he originally met with Creech regarding the complaints about the Renos' home business. After having advised Creech to send a letter to the Renos to cease the business activity, Newberry suggested that Creech ask the complaining neighbor if he would maintain a log of the activity he observed at the Renos. The neighbor agreed to maintain the log.
 {¶ 8} Creech called Newberry on approximately June 4th
and told him that he had observed a truck delivering three skids of salt to the Reno residence. Newberry instructed Creech to take pictures of the outside of the Reno residence.
 {¶ 9} On June 11, 2002, Newberry met with Creech and the neighbor who had been maintaining the log, discussing what they had observed. Newberry subsequently filed charges against Mr. Reno for violations of the City's zoning ordinance with regard to prohibited home occupations.
 {¶ 10} On August 27, 2002, Lightle received a voice mail from her supervisor, Horn, requesting her to look into certain matters pertaining to the Renos' business activities, including building permit information and whether the Renos were paying business income tax to the City. Lightle, unaware of any "confidentiality provision" in the Centerville Municipal Code, contacted the City's income tax superintendent and obtained the information for Horn. Horn further relayed the information to the finance director and had a discussion regarding the information with Newberry.
 {¶ 11} As a result of these events, on November 21, 2002, the Renos filed a complaint against the City, Newberry, and Creech for trespass, civil rights conspiracy, violation of Ohio constitutional rights, and public policy violations. An amended complaint was subsequently filed that added the defendants Horn and Lightle and an additional claim for invasion of privacy. Motions for summary judgment were filed by the defendants and the trial court subsequently granted those motions in a brief judgment. The Renos have filed this appeal from that determination.
 {¶ 12} The Renos raise the following assignments of error:
 {¶ 13} "[1.] In its order of August 5, 2003, the trial Court erred by granting summary judgment in favor of all of the named Defendant-Appellees on the basis of Sovereign Immunity.
 {¶ 14} "[2.] In its Order of August 5, 2003, the trial Court erred by denying injunctive relief, without a hearing, on the basis of Sovereign immunity."
Appellant's first assignment of error:
 {¶ 15} The Renos assert that the trial court erred in granting the defendants' motions for summary judgment because the motions were untimely, the court applied incorrect standards, and the court erred in granting the motions based on sovereign immunity. We disagree.
 {¶ 16} We note at the outset that our review of the trial court's decision to grant summary judgment is de novo. SeeHelton v. Scioto Cty. Bd. of Commrs. (1997),123 Ohio App.3d 158, 162. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. SeeState ex rel. Grady v. State Emp. Relations Bd. (1997),78 Ohio St.3d 181, 183, 1997-Ohio-221; Harless v. Willis Day WarehousingCo. (1978), 54 Ohio St.2d 64, 65-66.
 {¶ 17} "a. Timeliness of the motions
 {¶ 18} The Renos argue that the trial court should not have considered the defendants' motions for summary judgment as they were filed four days beyond the cutoff date for the filing of dispositive motions. The cutoff date for the filing of dispositive motions in this case was Thursday July 3, 2003. However, the Defendants motions were not filed until Monday July 7, 2003. This was despite the fact that the Defense counsel mailed the motions to the Clerk on July 1, 2003. Due to the Fourth of July holiday, July 7th was the first day the clerk's office was open after the July 3rd filing deadline. Thus, the defendants' motions were not excessively late.
 {¶ 19} Although it may have been error for the trial court to consider the motions without expressly granting the Defendants an extension of time, even if this Court were to reverse summary judgment on this basis, the trial court would still be free to grant the Defendants leave to file their motion out of time, resulting in the same outcome. Therefore, we find that any error in considering these motions was harmless.
b. Sovereign immunity for Creech, Horn, and Lightle
 {¶ 20} R.C. 2744.03(A) broadly grants immunity to employees of political subdivisions, providing as follows:
 {¶ 21} "(6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:
 {¶ 22} "(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
 {¶ 23} "(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
 {¶ 24} "(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term `shall' in a provision pertaining to an employee."
 {¶ 25} The Renos argue that Creech, Horn, and Lightle are not immune from liability because they acted "with malicious purpose, in bad faith, or in wanton or reckless manner." For the purposes of R.C. 2744.03, "malice" refers to "the willful and intentional desire to harm another, usually seriously, through conduct which is unlawful or unjustified." Moffitt v. Litteral, Montgomery App. No. 19154, 2002-Ohio-4973, ¶ 96. The Renos assert that Horn and Lightle acted maliciously because they engaged in activity prohibited by R.C. 718.13 and the City's Municipal Code 880.12(d) by improperly accessing and disclosing the Renos confidential tax information. R.C. 718.13 permit public officials to use and disclose confidential tax information "in connection with the performance of that person's official duties or the official business of the municipal corporation."
 {¶ 26} Horn and Lightle assert that they obtained the Renos' municipal tax information solely for official business purposes. In June of 2002, Mr. Reno had been charged with unlawfully engaging in a prohibited home occupation. Horn testified at his deposition that he sought information to determine whether Reno's business was properly registered and whether taxes were being paid in connection with the City's efforts to prove its charge. Horn's actions of seeking the information and Lightle's action in performing her boss's order to request the information does not amount to malice.
 {¶ 27} Additionally, the Renos argue that malice is demonstrated by Newberry's statement in his deposition that Horn exhibited "interest" in the Renos' zoning matter prior to any charges actually being filed. However, the simple fact that the city manager had an "interest" in an ongoing zoning dispute that had resulted from several complaints from the City's residents does not establish malice on Horn's part. This evidence certainly does not establish that Horn had a "hidden agenda to force the Renos to leave the City of Centerville." The Renos have offered no evidence to support this allegation as required by Civ. R. 56(E).
 {¶ 28} Further, the Renos allege that Horn and Lightle have engaged in "stalking activity" by occasionally driving by the Renos' residence to determine if the Renos are still conducting their business from their home. However, these allegations of stalking were not before the trial court. The Renos attempted to raise these allegations in a second amended complaint. However, the motion for leave to file this complaint was opposed by the Defendants and denied by the trial court. The Renos have not raised an assignment of error alleging error in the trial court's denial of their motion for leave to amend. Therefore, as these allegations were not before the trial court, we will not consider them on appeal.
 {¶ 29} Finally, we note that the other exceptions to employee's immunity listed in R.C. 2744.03(A)(6) also do not apply to this case. Horn and Lightle's behavior in securing the Renos' tax information was not manifestly outside the scope of their employment. Also, no section of the Ohio Revised Code imposes civil liability on a municipal employee for improperly obtaining tax information on a resident of the municipality or for expressing an "interest" in criminal proceedings against a resident of the municipality. We cannot find error in the trial court's grant of summary judgment to the Defendants Horn and Lightle upon a finding that they were immune from liability from the Renos' claims.
 {¶ 30} As for the allegations against Creech, the City's zoning inspector, the Renos do not allege that Creech acted manifestly outside the scope of his employment or that a section of the Revised Code expressly imposes civil liability on a municipal employee for engaging in the behavior allegedly committed by Creech. Rather, the Renos assert that Creech acted with a malicious purpose, in bad faith, or in a wanton or reckless manner, and thus, he is not entitled to immunity.
 {¶ 31} As stated earlier, "malice" refers to "the willful and intentional desire to harm another, usually seriously, through conduct which is unlawful or unjustified." Moffitt, supra. "Bad Faith" implies a "sinister motive that has `no reasonable justification'." Id. "Wanton" misconduct refers to the "failure to exercise any care", while "reckless" conduct is "conduct that causes an unreasonable risk of harm and is `substantially greater than that which is necessary to make his conduct negligent'." Id.
 {¶ 32} Creech testified in his deposition that he entered the Renos' property in June of 2002 because Newberry had asked him to take exterior pictures of the property. (Creech depo. 137). Creech stated that no one had informed him that he needed probable cause to gather evidence on the Renos, and he had not believed that he needed a search warrant to enter the Renos' property. (Creech depo. 111, 145). Creech stated that he enters onto private property "everyday" without a search warrant. (Creech depo. 114-115). Further, Creech testified that he had believed that he did not have to leave private property unless ordered to do so by the owner of the property. (Creech depo. 103, 114, 119, 148-150).
 {¶ 33} The Renos allege that Creech conspired with Newberry to deprive the Renos of their civil rights. The evidence in the record simply does not support this fact. Creech contacted Newberry for assistance because he had received several complaints from residents regarding the Renos operating a business out of their residence. The Renos point to a statement by Creech in his deposition that Newberry wanted him to ask one of the Renos' neighbors to go onto the Renos' property and observe what was stored in the Renos' garage. (Creech depo. 109-110). However, Creech testified that he did not ask the neighbor to enter the Renos' property but simply whether the neighbor knew what was in the Renos' garage. (Id. at 121-122). Thus, even if we assumed that Creech and Newberry conspired to have the Renos neighbor go onto the Renos property, no actual damage came from this conspiring as Creech did not ask the Renos' neighbor to go on to the Renos' property. As there was no actual damage or injury from the conspiracy, the Renos could not establish a claim based on civil conspiracy to deprive the Renos of their civil rights, let alone that such conspiracy was knowing and malicious. Renner v. East Mfg. Corp., Portage App. No. 2001-P-0135, 2002-Ohio-6691, ¶ 54; Williams v. Aetna Fin. Co.,83 Ohio St.3d 464, 475, 1998-Ohio-294.
 {¶ 34} The Renos have offered no evidence to establish that Creech acted with a malicious purpose, in bad faith, or in a wanton or reckless manner. Rather, Creech's deposition testimony establishes that he believed that he did not need a search warrant, but rather that he could go onto private property unless and until the property owner ordered him off the property. Regardless of whether this belief was accurate, Creech's belief negates any allegation that his entry onto the Renos' private property was with a malicious purpose, in bad faith or in a wanton or reckless manner. Rather than a malicious purpose, Creech's deposition testimony evidences that his conduct was done for a lawful purpose in response to legitimate complaints of City's residents. Thus, no genuine issue of material fact remains as to whether the Renos can establish an exception to the sovereign immunity conveyed upon Creech as a municipal employee. Therefore, we cannot say that the trial court erred in granting summary judgment in Creech's favor based on a finding that he was immune from liability.
c. Immunity for Newberry
 {¶ 35} The Renos assert that the trial court erred in finding that Newberry was immune under 2744.03 because the City had denied that Newberry was an employee in its answer.
 {¶ 36} As stated earlier, an employee of a municipality is immune from liability under R.C. 2744.03(A)(6) unless one of the following exceptions applies:
 {¶ 37} "(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
 {¶ 38} "(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
 {¶ 39} "(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term `shall' in a provision pertaining to an employee."
 {¶ 40} An employee is defined in R.C. 2744.01(B) as "an officer, agent, employee, or servant, whether or not compensated or full-time or part-time, who is authorized to act and is acting within the scope of the officer's, agent's, employee's or servants's employment for a political subdivision. `Employee' does not include an independent contractor * * *."
 {¶ 41} In his deposition, Newberry stated that he had worked for the City of Centerville doing prosecution since 1974 until the present day. (Newberry depo. at 20). Additionally, Newberry is employed as the prosecutor for the City of Kettering and Washington Township. From 1974 until February 1, 2002, Newberry was directly compensated by the City of Centerville. (Id.). However, beginning in February of 2002, Centerville, Washington Township, and Kettering entered into a contract whereby Centerville and Washington Township now pay Kettering for Newberry's services and Newberry's compensation from the City of Kettering has increased. (Id.) Neither Newberry's work status nor his work responsibilities have changed as a result of this change. (Id.) Newberry's work for the City of Centerville remains to be assigned and directed in the same manner as before. (Id.)
 {¶ 42} Newberry stated that his duties as prosecuting attorney for the City of Centerville includes advising law enforcement agencies, reviewing investigative reports, determining whether or not charges will be filed in a particular situation, preparing cases for trial, causing subpoenas to be issued, preparing responsive pleadings, responding to discovery requests, and representing the City of Centerville at hearings and trials. (Id. at 8-9). Additionally, Newberry explained that his duties further included being available at all hours to answer calls from law enforcement agencies, building inspectors, zoning inspectors, and fire inspectors. (Id.) Moreover, Newberry explained that he makes the determination as to whether a criminal complaint will be filed against someone. (Id. at 25). Newberry stated in his deposition that he believed he was an employee of the City of Centerville and not an independent contractor. (Id. at 21). However, in the City of Centerville's answer to the amended complaint they denied that Newberry was an employee of the City.
 {¶ 43} The Renos argue on appeal that the City's denial that Newberry was an employee in their answer created a genuine issue of material fact as to whether Newberry was an employee of the City. Therefore, the Renos assert that it was error for the trial court to grant summary judgment based on a determination that Newberry was immune pursuant to R.C. 2744.03(A)(6) — the provision granting immunity to municipalities' employees. We disagree. The only evidence before the trial court regarding Newberry's duties was that contained in Newberry's deposition. As an "employee" is defined in R.C. 2744.01(B), Newberry qualified as an employee. Newberry certainly was a compensated officer, agent, employee, or servant who was authorized to act for the City of Centerville and was acting in the scope of that employment. Newberry was authorized on behalf of the City to file complaints, counsel law enforcement officers and inspectors, and represent the City in hearings and at trial. The Renos presented no evidence to counter this evidence that Newberry was authorized to act on behalf of the City and acted within the scope of that employment. Rather, the Renos only point to the City's denial. The Renos do not direct our attention to any other evidence to support that Newberry was an independent contractor. Thus, regardless of the City's denial in its answer, based on the R.C.2744.01 definition of an "employee", no genuine issue of material fact remained as to whether Newberry was an employee under R.C.2744.03 and was entitled to the immunity reserved for those individuals. Thus, the trial court did not err in applying R.C.2744.03 immunity to Newberry.
 {¶ 44} The Renos additionally, appear to allege that Newberry would not be entitled to immunity under R.C. 2744.03 because he engaged in conduct that was wanton or reckless or with a malicious purpose. The Renos allege that Newberry solicited a false affidavit, conspired with Creech to commit an illegal search and seizure, obtained confidential tax information without a subpoena, and destroyed evidence.
 {¶ 45} The Renos' allegation that Newberry solicited a false affidavit is based upon Creech's statement in his deposition that Newberry determined which sections of the City's Municipal Code the Renos had violated based upon Creech's investigation. (Creech depo. at 169-170). Creech merely stated that Newberry made the determination as to which of the municipal code sections to identify in the complaint and that he had "no opinion" as to which of the sections was cited. (Id.) In the affidavit for the criminal complaint, Creech only opined that Mr. Reno had violated the municipal code prohibiting a home occupation, he did not opine as to which subsection of the code was violated as he was discussing in his deposition. This does not amount to soliciting a false affidavit as the Renos claim.
 {¶ 46} As for the Renos' allegation that Newberry conspired with Creech to commit an illegal search and seizure, the Renos point to Creech's deposition testimony in which he stated that Newberry asked him to see if a neighbor would go on to the Renos' property and look in their garage, that Newberry asked him to see if a police officer would make a purchase at the Renos' retail store operating out of their garage, and that Newberry told Creech to take pictures of the exterior of the Renos' property. In regard to Creech's assertion regarding what Newberry asked him to ask the Renos' neighbor and a police officer to do, nether the neighbor or a police officer actually entered the Renos' property per Creech's request. Thus, even if we assume that Newberry did make these requests to Creech, which Newberry denies occurred, the Renos did not suffer any damage from the requests as no actions were taken on these requests. As we stated when addressing Creech's immunity, without actual damage as a result of the conspiracy, the Renos cannot prove a civil conspiracy.Renner, supra. Therefore, no conspiracy claim could be sustained based on Creech's assertions that Newberry requested Creech ask either a police officer or the Renos' neighbor to enter the Renos' property. Finally, the Renos argue that Newberry conspired with Creech to deprive him of his civil rights when Newberry asked Creech to take exterior photographs of the Renos' property. Both Creech and Newberry agree that Newberry only told Creech to take exterior photographs. Newberry did not tell Creech to go onto the Renos' property and certainly did not advise Creech to enter the Renos' residence. Nothing in this statement indicates Newberry was attempting to deprive the Renos of their civil rights. Moreover, Newberry's request for photographs does not amount to wanton or reckless conduct or indicate a malicious purpose. Newberry's request to Creech does not amount to an R.C.2744.03(A)(6)(b) exception to his immunity.
 {¶ 47} Additionally, the Renos point to Newberry's behavior in learning of the Renos' confidential tax information without first obtaining a subpoena. Newberry testified in his deposition that Lightle had called him and had informed him that Horn had instructed her to obtain the Renos' tax return or business tax return. (Newberry depo. at 61-63). Further, Lightle told Newberry the general amount the Renos' business generated. (Id.). Additionally, Newberry believed that he might have mentioned the information to the Renos' criminal trial counsel. (Id.). We do not find that this conduct amounted to wanton or reckless conduct or demonstrated a malicious purpose on Newberry's behalf. It was not Newberry but Horn and Lightle who sought out and obtained the Renos' tax information. Further, it was Lightle who contacted Newberry to inform him of the tax information. Newberry's action in relaying what he had learned in the conversation to the Renos' counsel was not wanton and reckless. Newberry genuinely believed that he might need to subpoena the information as it might be relevant at trial as evidence of the size of the Renos' business. This does not amount to evidence that Newberry acted with a malicious purpose, in bad faith or in a wanton or reckless manner.
 {¶ 48} Finally, the Renos allege that Newberry destroyed evidence, specifically that Newberry threw away his prosecutor file at the close of the criminal case against Joseph Reno. (Id. at 17-19). Newberry testified that he routinely discards his prosecutor file at the close of criminal cases because he is able to duplicate everything that is in the file and he lacks the storage capacity to maintain all of the files he creates. (Id.) The Renos allege that this conduct was wanton and reckless because Joseph Reno had not exhausted his criminal appeal and Newberry's deposition in this matter had not yet occurred. We do not agree. Newberry's prosecutor file was merely duplicative of documents in other files. Moreover, Newberry routinely discarded his prosecutor's files at the same point in every case. We cannot find that his discarding of the file in this matter was either with a malicious purpose, in bad faith, or wanton or reckless.
 {¶ 49} Therefore, we have examined all of the Renos' arguments pertaining to Newberry and we cannot find that Newberry was malicious, in bad faith, or wanton or reckless in his behaviors. Thus, as we have already determined that for the purposes of R.C. 2744.03 Newberry was an "employee" of the City of Centerville, Newberry is immune from liability pursuant to R.C. 2744.03(A)(6). The trial court did not err in so concluding and granting Newberry's motion for summary judgment.
d. Immunity for the City
 {¶ 50} Generally, a political subdivision is immune from liability incurred from the performance of either a governmental or proprietary function. Colbert v. City of Cleveland,99 Ohio St.3d 215, 2003-Ohio-3319; Greene Cty. Agricultural Soc. v.Liming (2000), 89 Ohio St.3d 551, 556-557, 2000-Ohio-486; R.C.2744.02(A)(1). However, this immunity is subject to five exceptions listed in R.C. 2744.02(B). The five exceptions to immunity are: (1) the negligent operation of a motor vehicle by an employee of the political subdivision, (2) negligent performance of acts by employees of the political subdivision with respect to "proprietary functions" of the political subdivision, (3) negligent failure of the political subdivision to keep public roads in good repair, (4) negligent creation or failure to remove physical defects in buildings and grounds; and (5) where civil liability is expressly imposed upon a political subdivision by another section of the Revised Code. If any of the exceptions apply, the court must further analyze whether any of the defenses in R.C. 2744.03 apply, providing the political subdivision with a defense against liability.
 {¶ 51} Ohio courts have previously held that political subdivisions are entitled to immunity on claims for trespass,Monesky v. City of Wadsworth (Apr. 3, 1996), Medina App. No. 2478-M; conspiracy, Lanham v. Franklin Twp., Clermont App. No. CA 2002-07-052, CA 2002-08-068, 2003-Ohio-2222; LRL Properties v.Portage Metropolitan Housing Authority (Dec. 17, 1999), Portage App. Case. No. 98-P-0070; and invasion of privacy, Blair v. Cityof Norwalk (Feb. 6, 1998), Huron App. No. H-97-005. Further, zoning inspections are a governmental function not a proprietary function. R.C. 2744.01(C)(2)(2)(p).
 {¶ 52} The Renos argue that an exception to the immunity is present in R.C. 2744.02(B)(5) that provides an exception to immunity when civil liability is expressly imposed upon a political subdivision by another section of the revised code. The Renos assert that Centerville Municipal Code 1482.03(a) and 880.12 create liability for the City. However, R.C. 2744.02(B)(5) only provides an exception to the immunity when it is imposed by another section of the Revised Code. In this instance, the Renos are not pointing to another section of the Revised Code but to a portion of the City's Municipal Code to assert an exception to the immunity. However, as this is not a section of the revised code expressly imposing civil liability, the municipal code sections do not create an exception to the political subdivision's immunity.
 {¶ 53} Additionally, the Renos assert that the City is liable under the doctrine of respondeat superior. A political subdivision may not be held liable under a theory of respondeat superior unless one of the exceptions to the sovereign immunity listed in R.C. 2744.02(B) applies. Lee v. Cleveland, Cuyahoga App. No. 80740, 81504, 2003-Ohio-742. As the Renos have failed to point to any applicable exception listed in R.C. 2744.02(B) to the City's sovereign immunity, we cannot find that the trial court erred in granting the City's motion for summary judgment.
 {¶ 54} The Renos first assignment of error is without merit and is overruled.
Appellant's second assignment of error:
 {¶ 55} The Renos argue that the trial court erred in overruling their motion for an injunction based upon a finding that the City was immune pursuant to R.C. 2744. We disagree.
 {¶ 56} We note at the outset that our standard of review on a trial court's decision on a motion for an injunction is whether the lower court abused its discretion. State ex rel. Miller v.Private Dancer (1992), 83 Ohio App.3d 27, 32. An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Id. The Renos filed a motion for an injunction to prevent the City employees from continuing their "stalking" activities. The Renos assert that the trial court dismissed this motion based on a determination that the City was immune pursuant to R.C. 2744. We initially note that as we mentioned earlier, the Renos' claims based on "stalking" activity were raised in their second amended complaint which the trial court denied them leave to file. This denial of leave to file has not been asserted as error in this appeal and is not before us. Moreover, the trial court did not dismiss the Renos' motion for an injunction based upon the City's sovereign immunity but rather found that the motion was moot considering the remainder of the complaint was gone as a result of the grant of summary judgment to the Defendants. We do not find that the trial court abused its discretion. We have upheld the trial court's grant of summary judgment, and thus, the Renos' motion for an injunction is moot. The Renos' second assignment of error is without merit and is overruled.
 {¶ 57} The judgment of the trial court is affirmed.
Brogan, J. and Grady, J., concur.