[Cite as *Harvey v. Sys. Effect, L.L.C.*, 2020-Ohio-1642.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

|  |  |  |
|---|---|---|
| ANNE C. HARVEY | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 28497 |
| | : | |
| v. | : | Trial Court Case No. 2017-CV-5748 |
| | : | |
| SYSTEMS EFFECT, LLC, et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendants-Appellees | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 24th day of April, 2020.

. . . . . . . . . . .

PAMELA L. PINCHOT, Atty. Reg. No. 0071648, 345 North Main Street, Springboro, Ohio 45066
     Attorney for Plaintiff-Appellant

MARK S. MADDOX, Atty. Reg. No. 00298520, 987 South High Street, Columbus, Ohio 43206
     Attorney for Defendants-Appellees

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Plaintiff-Appellant, Anne Harvey, appeals from a summary judgment granted in favor of Defendants-Appellees, Systems Effect, LLC dba Training Cove ("Training Cove"), Claudia Jordan, and Steve Jordan (collectively, "Appellees"). According to Harvey, the trial court erred by conflating the torts of false light and defamation for purposes of applying the statute of limitations. Harvey further contends that genuine issues of material fact exisedt regarding her false light claim. In addition, Harvey argues that the trial court erred in granting summary judgment on her statutory claims under R.C. 2741.02 for name appropriation. Finally, Harvey contends that the trial court erred in concluding that qualifying privilege could protect Appellees' conduct.

{¶ 2} As a preliminary point, we note that Harvey has raised a number of issues in her brief that relate to the magistrate's decision. In fact, most of Harvey's argument relates to dicta and other matters discussed in that decision. However, the trial judge, who adopted the magistrate's report with modifications, based his decision on two points only: (1) that Harvey's false light claim was barred by the one-year statute of limitations applicable to defamation claims; and (2) that, because Harvey's claim under R.C. 2741.02 was not within the claims intended to be protected under that statue, Appellees did not violate the statute by publishing the three slides that were at issue in this litigation. The trial court found no genuine issues of material fact regarding either issue, granted Appellees' summary judgment motion, and dismissed Harvey's case.

{¶ 3} In view of the above facts, we will consider only the issues decided by the trial court judge. After considering the record and the applicable law, we agree with the trial judge that no genuine issues of material fact existed and that Appellees were entitled to summary judgment on Harvey's claims.

{¶ 4} Specifically, the trial court did not err in rendering summary judgment in favor of Appellees on Harvey's false light invasion of privacy claim. A false light invasion of privacy claim involving allegations that would also support a defamation claim has the same statute of limitations applied to it as the defamation claim. That is the case here, and since Harvey's claim was not filed within the one-year statute of limitations for defamation claims, it is barred.

{¶ 5} The trial court also did not err in granting summary judgment to Appellees on Harvey's statutory claim under R.C. 2741.02 for use of her persona. Appellees were exempt under R.C. 2741.09(A)(1)(b) and (A)(3), as the material in question was newsworthy, and Harvey's persona was also used "in connection with the * * * reporting of an event or topic of general or public interest." Furthermore, R.C. 2741.02 did not apply to the case under an exception to the statute found in R.C. 2741.02(D)(1). Under this exception, Appellees did not have to obtain Harvey's consent to use her persona because they used it "in connection with any news, public affairs, * * * or account * * *."

{¶ 6} Finally, given the disposition of the first two issues, Harvey's assignment of error concerning qualified privilege under R.C. 2317.05 is moot. Accordingly, the judgment of the trial court will be affirmed.


I.   Facts and Course of Proceedings

{¶ 7} This case arose as an offshoot of prior litigation involving Harvey's 2011 sale of a residence in Kettering, Ohio, to Andrew and Sarah Seitz. *See Seitz v. Harvey*, 2d Dist. Montgomery No. 25867, 2015-Ohio-122. In that action, the Seitzes sued Harvey and her mother, Billie Harvey, for fraudulent misrepresentation, fraudulent concealment,

and fraudulent non-disclosure with regard to sewer/plumbing and termites. After a four-day jury trial in March 2013, "[t]he jury found in favor of the Harveys with regard to the sewer/plumbing issues, but found for the Seitzes on all three claims for fraud regarding termites. The jury awarded compensatory damages of $68,276 to the Seitzes." *Id.* at ¶ 18.

{¶ 8} The Harveys initially purchased the home in 2003 and were alerted at that time by the seller, through an Ohio Residential Property Disclosure Form, of prior treatment for wood-boring inspects. In addition, the Harveys learned through their own " 'wood destroying insect infestation inspection report,' which was requested and signed by both Harveys on September 26, 2003, * * * that there was 'visible evidence of a wood destroying insect infestation.' " *Id.* at ¶ 7. "The report further noted that there was evidence of prior treatment, and that the infestation was inactive; no treatment was recommended." *Id.*

{¶ 9} Despite this knowledge, when the Harveys later attempted to sell the house in 2005, they "completed a residential property disclosure form on which they answered Section G regarding knowledge of woodboring insects in the negative." *Id.* After the house failed to sell, they took it off the market and completed substantial remodeling in 2006-2007. *Id.*

{¶ 10} In November 2009, the Harveys again placed the house on the market, and again answered Section G of the property disclosure form negatively. *Id.* at ¶ 8. Between then and December 2010, when the Seitzes viewed the house, it was vacant. *Id.* at ¶ 8 and 10. After making an offer on the house, an inspection was done, with Andrew Seitz present. At the time, a sofa that Harvey had left at the house covered

"[t]wo large spots in the living room." *Id.* at ¶ 13.[1]  "Likewise, in one bedroom closet, some floor damage was concealed by a pink curtain on the floor.  A second bedroom closet had a large tile, leftover from the earlier remodeling, on the floor.  It also covered some damage." *Id.*  The part of the current inspection report which contained a " 'Wood Destroying Insect Inspection Report' " "indicated that there was no visible evidence of wood destroying insects, but that drill marks outside the home indicated 'past treatment for termites.'  No treatment was recommended." *Id.*

{¶ 11} In early January 2011, the Seitzes moved into the house.  "Approximately one month later, Mr. Seitz was moving a chair when his boot broke through a floorboard in the living room.  He observed what he believed to be termites.  On March 27, 2011, the Seitzes contacted a pest control company and the home was treated for termites.  Eventually it was also determined that tree roots had grown into the clay sewer tiles, which had broken apart, causing drainage and water backup problems." *Id.* at ¶ 15.  In September 2011, the Seitzes filed suit against the Harveys, which resulted in a $68,276 judgment in their favor.

{¶ 12} Due to the filing of post-judgment motions, the notice of appeal was not filed until August 14, 2013; the Seitzes then filed a notice of cross-appeal on September 10, 2013.  The cross-appeal involved denials of the Seitzes' request for punitive damages and their motion to enforce an alleged post-judgment settlement agreement.  *Id.* at ¶ 19-20.

{¶ 13} On January 16, 2015, we affirmed the trial court's judgment in part and

---

[1] The real estate agent, not the Harveys, staged the house for sale.  *Seitz*, 2d Dist. Montgomery No. 25867, 2015-Ohio-122, at ¶ 9.

reversed it in part. The Harveys had asserted two assignments of error on appeal. The first was that a directed verdict or judgment notwithstanding the verdict should have been granted with respect to fraud concerning patent (obvious) defects in the flooring and latent (hidden defects) found by the person the Seitzes had hired to assess the termite damage. *Id.* at ¶ 22-36. The second assignment of error concerned whether the jury verdict finding fraud on latent (hidden) defects was against the manifest weight of the evidence. *Id.* at ¶ 38-38.

{¶ 14} The patent and latent fraud claims had different bases. The patent fraud claim involved the termite damage to the wood floors. This involved the failure of the Harveys to disclose the damage to the hardwood floors. Concerning this claim, we commented that:

> R.C. 5302.30(C) requires sellers to act in good faith and to disclose facts
> regarding "material matters relating to the physical condition of the property
> to be transferred." It is undisputed that the Harveys did not disclose the
> existence of termite damage to the hardwood floors, despite the fact that
> the 2003 Cordell disclosure form and their 2003 termite inspection report
> alerted them to such damage. There was no evidence that the Harveys
> remediated any existing damage to the floors. We thus conclude that this
> damage should have been disclosed.

*Id.* at ¶ 25.

{¶ 15} After reciting various evidence, we concluded that the damage would have been obvious to the purchasers and that they could not demonstrate fraud "because the evidence was insufficient to prove the required element of justifiable reliance. In other

words, [the Seitzes] were on notice that there had been previous termite damage and that there was existing damage to the hardwood floors, despite the fact that three of those areas were underneath items that they or their inspector did not move." *Id.* at ¶ 31. This was not an exoneration of the Harveys; it was simply a finding that the purchasers should have been aware of an obvious defect. Based on the failure to prove justifiable reliance, we held that the trial court should have granted a directed verdict on this point. *Id.*

{¶ 16} The second part of the first assignment of error involved a claim of latent (hidden) termite damage uncovered when the Seitzes' damages assessor (Rob Fickert) removed flooring and drywall. The crux of this claim was that "the Harveys were aware of the damage, because the Harveys' 2003 termite inspection placed them on notice of such damage, and because they remodeled areas of the home that were adjacent to extensive latent damage." *Id.* at ¶ 32. In this context, we again stressed that "[i]t is undisputed that the Harveys made no disclosure regarding any termite damage." *Id.*

{¶ 17} Concerning this claim, we concluded that Fickert's opinion evidence lacked a proper foundation, but that no error occurred in refusing to grant a directed verdict or a judgment notwithstanding the verdict because the evidence was, in fact, submitted to the jury. *Id.* at ¶ 3.

{¶ 18} Finally, the second assignment of error also involved the latent defect issue, and the challenge here was that the verdict was against the manifest weight of the evidence. *Id.* at ¶ 38-39. In this regard, we found Fickert's testimony "speculative and unpersuasive," noting that "the record is devoid of any evidence establishing the age or onset of the latent termite damage found by Fickert. Neither Fickert, nor anyone else, provided testimony regarding how long the damage had been present." *Id.* at ¶ 43.

Consequently, we concluded that the judgment on the latent defect was against the manifest weight of the evidence and reversed the judgment on that issue. However, we also stated that the Seitzes were entitled to a new trial on the latent defect issue. *Id.* at ¶ 48. Again, none of this was an exoneration of the Harveys.

{¶ 19} With respect to the cross-assignments of error, we found the punitive damages issue moot because the case was being retried. *Id.* at ¶ 65. And finally, we concluded that despite the parties' agreement in principle to payment by the Harveys of around $$68,721.93 (which included court costs and some interest), the trial court "could have reasonably concluded that the parties had not come to an agreement." Therefore, we could not find the court's decision was an abuse of discretion. *Id.* at ¶ 53 and 61-62. The case was never retried, however, because the parties reached a settlement after the remand and dismissed the case with prejudice on August 25, 2015.

{¶ 20} As noted, the notice of appeal in the Seitz case was filed in August 2013, and our judgment was issued in January 16, 2015. The trial court case was "the subject of internet articles in the Dayton Daily News, the American Bar Association, and on social media." Response to Motion for Summary Judgment, Ex. 1, Affidavit of Anne Harvey, ¶ 4. This brings us to the circumstances of the current case.

{¶ 21} Between the jury verdict and when our judgment was rendered on appeal, Claudia Jordan developed continuing education training materials that included references to the *Seitz* case. Claudia, a licensed relator, and her husband, Steve Jordan, own two companies: Diamondback Realty and Training Cove, which is a continuing education online training company. One employee of Training Cove, Phyllis Bass, wrote and researched classes. Claudia's role in Training Cove was to edit all the

classes, record them, write blogs, and answer all customer emails. Claudia also had final approval over all seminars offered through Training Cove.

{¶ 22} Classes, which are continuing education for realtors, are sold individually, or in a package of 10. Most people bought the entire package for $79, rather than just the one $15 class referencing Anne Harvey. That particular class was entitled "Drugs, Disasters, and Other Disclosures," and the part involving Harvey consisted of three slides out of "an almost 200 page class." Response to Motion for Summary Judgment, Ex. 3, Deposition of Claudia Jordan, p. 22, 23, 25, and 52.[2]

{¶ 23} Originally, the class was an Arizona class and only contained Arizona case studies. Since Training Cove was moving into Ohio, Claudia wanted to include some Ohio case studies. Claudia was specifically looking for a case on fraud and googled "Ohio fraud cases." *Id.* at p. 26. Claudia also looked for termite cases because that is a common issue in real estate. The first thing that came up in the search was Anne Harvey's lawsuit with the Seitzes. The case was mentioned multiple times by the Dayton Daily News and several other articles. Because the case was very prevalent in the news, Claudia chose it to include in the class. *Id.* at p. 26-27. The name of the Dayton Daily News article was "Attorney Loses Civil Fraud Case in Termite-Infested Home." *Id.* at p. 50. (Harvey is an attorney.)

{¶ 24} Claudia conducted the search between July and November 2014, and she was the one who wrote the class because Bass was not then working for Training Cove. *Id.* at p. 27-28. To check the content of the Dayton Daily News article, Claudia looked at the final verdict of the trial court case, which was probably on a PDF online. She did not

---

[2] This exhibit will be referenced as Ex. 3, along with the relevant page number.

go to the clerk of courts' website. *Id.* at p. 29 and 34-35.

{¶ 25} The course was offered for sale in June 2015. *Id.* at p. 32. The first of the three slides was entitled "Termite Case Study" and had two bullet points, which stated that:

■ An attorney in Dayton, Ohio, Anne C. Harvey, sold her home to buyers, Andrew and Sarah Seitz in 2011.

■ The seller, Harvey, did not indicate on the Ohio Residential Property Disclosure Form that there were termites, the extent of damage, or anything with regards to termite infestation.

Claudia Jordan Affidavit (filed Dec. 7, 2018), ¶ 2, and Attachment 1 to the affidavit. This slide also contained a picture of an outside surface, which looked like part of a cement foundation. It was not a picture of Harvey's home; it was a stock photo.[3]

{¶ 26} The second slide was titled "Termite Case Study – A Case of Fraud?" In this slide, there were the following three bullet points:

■ Upon closing on the home, the Seller left a few personal items at the property, which were placed in areas which covered damage caused by termite infestation.

■ The Buyers found the termite damage once entering the home and removing the personal property that had been left by the seller.

■ According to court documentation, the Seller was aware of the termite infestation. Records indicate that the previous seller had disclosed to

---

[3] The slide also purportedly showed termites. Ex. 3 at p. 41. However, it is very difficult to see anything clearly in the slide.

Harvey that there were termites in the home.

Claudia Jordan Affidavit at ¶ 2 and Attachment 2 to the affidavit.  This slide also contained a stock photo of a wood floor, which showed some damage.   Ex. 3 at p. 42.

{¶ 27} Finally, the third slide was titled "Termite Case Verdict."   It stated that:

A civil jury unanimously ruled in favor of the Buyers in this case as there was clear indication of non-disclosure and fraudulent behavior by the Seller.

Harvey was ordered by a Montgomery County Common Pleas Court to pay more than $68,000 to the Buyers for the fraudulent conduct relating to the sale of her termite infested home.

This case acts as an important reminder for Buyers and Sellers to:

✓  Disclose all known material defects when selling a property.

✓   Conduct a thorough investigation of the property before purchasing.

✓  Be honest and do not act in a misleading or fraudulent manner.

Claudia Jordan Affidavit at ¶ 2 and Attachment 3 to the affidavit.  Like the other two slides, this slide contained a stock photo.   The photo was of a blank check and a pen.  *Id.*

{¶ 28} In November 2017, Harvey learned that Appellees were using the trial court case in their online course and identified her as " 'Anne C. Harvey, a Dayton Attorney.' " Harvey Affidavit at ¶ 7 and 11.   Harvey then filed suit against Appellees on December 12, 2017.   The complaint contained seven causes of action, including: (1) false light; (2) defamation per se and per quod; (3) negligence; (4) gross negligence; (5) piercing the

corporate veil; (6) civil conspiracy; and (7) injunctive relief. Harvey asked for compensatory and punitive damages. Later, Harvey filed an amended complaint eliminating the gross negligence claim and substituting a statutory claim under R.C. 2741.02.

{¶ 29} In December 2018, Appellees filed a motion for summary judgment. Shortly thereafter, Harvey dismissed several claims without prejudice, including her claims for defamation, negligence, civil conspiracy, and piercing of the corporate veil. The only claims left were the false light claim and the claim under R.C. 2741.02. The same day, Harvey responded to the summary judgment motion. After Appellees replied, a magistrate filed a decision on January 18, 2019, granting summary judgment in favor of Appellees on all claims.

{¶ 30} Harvey then objected to the magistrate's decision. Upon review, the trial court adopted the decision, with modifications, and dismissed Harvey's claims. Harvey timely appealed from the judgment of the trial court.

## I. The False Light Claim

{¶ 31} Harvey's First Assignment of Error states that:

The Trial Court Erred in Finding That the Jordans Are Entitled to Summary Judgment on Harvey's False Light Claim.

{¶ 32} Under this assignment of error, Harvey contends that the trial court conflated false light and defamation, and improperly used the shorter statute of limitations for defamation in its dismissal of her claim.

{¶ 33} In its decision, the trial court first concluded that the magistrate had properly

determined the legal and factual matters, and it adopted the magistrate's finding that the false light claim was barred by the one-year statute of limitations for defamation in R.C. 2305.11(A). *See* Decision Adopting, with Modifications, Magistrate's Report, p. 1. The court went on to note that it agreed with the magistrate that the slides accurately represented what happened in the trial court in *Seitz*, and stressed that the "finding of misrepresentation and damages were not reversed by the court of appeals." *Id.* The court then remarked that in contrast to defamation cases, truth is not a defense to false light claims. *Id.* at p. 2. In this vein, the court said that:

> False light is a misattribution of a person's actions – something that is misleading. It is arguable in this case that the slides, while true as far as they went, may have misattributed to Ms. Harvey an ultimate verdict against her of fraud. An attribution which is false and may be offensive to a practicing attorney.
>
> The court does not adopt the dicta in the magistrate's decision regarding what may be a finding that the claim is barred because the slides are true. The only adoption and finding is that there are no issues of material fact and the claim of false light is barred by a one-year limitation of action.

*Id.*

{¶ 34} Harvey argues that the trial court, while properly citing the law, improperly conflated false light and defamation. "A trial court may grant a moving party summary judgment pursuant to Civ.R. 56 if there are no genuine issues of material fact remaining to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable

minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor." *Smith v. Five Rivers MetroParks*, 134 Ohio App.3d 754, 760, 732 N.E.2d 422 (2d Dist.1999), citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 375 N.E.2d 46 (1978). "We review decisions granting summary judgment de novo, which means that we apply the same standards as the trial court." (Citations omitted.) *GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, ¶ 16 (2d Dist.). Consequently, appellate courts do not defer to trial courts during summary judgment review. *Powell v. Rion*, 2012-Ohio-2665, 972 N.E.2d 159, ¶ 6 (2d Dist.), citing *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993).

**{¶ 35}** As noted, Harvey initially brought claims for both defamation and false light. Under R.C. 2305.11(A), actions for libel and slander must be brought within one year after the cause of action accrues. In defamation cases, the cause of action accrues on "the date of publication of the defamatory matter," not on the date of discovery. *Myles v. Johnson*, 2d Dist. Montgomery No. 21600, 2007-Ohio-2963, ¶ 16. In the case before us, publication occurred in June 2015, and the complaint was filed more than two years later, in December 2017. Under the statute, Harvey's defamation claim was clearly barred.

**{¶ 36}** In 2007, the Supreme Court of Ohio recognized the tort of "false light," but did not indicate a specific statute of limitations that should apply. *Welling v. Weinfeld*, 113 Ohio St.3d 464, 2007-Ohio-2451, 866 N.E.2d 1051, syllabus, adopting Restatement of the Law 2d, Torts, Section 652E (1977). However, R.C. 2305.09(D) states that a four-year statute of limitations applies "[f]or an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 1304.35, 2305.10 to 2305.12, and 2305.14 of the

Revised Code * * *." False light is an injury that does not arise under a contract and is not listed in any of these sections. Therefore, one could reasonably argue that a four-year statute of limitations applied.

{¶ 37} Nonetheless, courts have held that because defamation and false light overlap, "a false light invasion of privacy claims [sic] involving allegations that would also support a defamation claim has the same statute of limitations applied to it as the defamation claim." *Stainbrook v. Ohio Secy. of State*, 2017-Ohio-1526, 88 N.E.3d 1257, ¶ 27 (10th Dist.). *Accord Krowiak v. BWXT Nuclear Operations Group, Inc.*, N.D.Ohio No. 1:18-CV-629, 2018 WL 5312463, *5 (Oct. 25, 2018); *Carter v. Natl. City Bank*, S.D.Ohio No. 1:17-CV-508, 2018 WL 3543699, *9 (July 23, 2018); *Newton v. Ellis*, N.D.Ohio No. 1:17-CV-2545, 2018 WL 1991722, *9 (Apr. 27, 2018).

{¶ 38} The rationale for applying the one-year statute of limitations in these situations is that where the allegations " 'would support both a defamation and false-light invasion of privacy [claim], * * * [t]o hold otherwise would essentially eliminate the one-year statute of limitations for defamation claims under O.R.C. § 2305.11(A).' " *Stainbrook* at ¶ 28, quoting *Murray v. Moyers*, S.D.Ohio No. 2:14-CV-02334, 2015 WL 5626509, *4 (Sept. 4, 2015). This is consistent with the discussion in *West v. Media Gen. Convergence, Inc.,* 53 S.W.3d 640 (Tenn.2001), which is a case on which *Welling* heavily relied in adopting the tort of false light. *Welling* at ¶ 36-50.[4]

---

[4] The Supreme Court of Ohio did differ with *West* in one respect. As the court observed, "*West* makes the standard of fault identical for defamation and false-light claims: a negligence standard in regard to statements made about private citizens and an actual-malice standard for statements made about public figures. We choose to follow the Restatement standard, requiring that the defendant 'had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed,' in cases of both private and public figures." *Welling*, 113 Ohio

{¶ 39} In *West*, the Supreme Court of Tennessee recognized that one issue with recognizing false light as a tort was that "the protection provided by false light either duplicates or overlaps the interests already protected by the defamation torts of libel and slander." *West* at 645. Courts that had rejected false light were concerned that the tort overlapped with defamation, and that recognizing false light " 'would reduce judicial efficiency by requiring our courts to consider two claims for the same relief which, if not identical, would not differ significantly.' " *Id.*, quoting *Renwick v. News and Observer Publishing Co.*, 310 N.C. 312, 312 S.E.2d 405, 413 (1984).[5] The court concluded, however, that judicial economy concerns were "outweighed in this instance by the need to maintain the integrity of the right to privacy" in Tennessee. *Id.* at 646. However, the court also commented that:

> [W]e recognize that application of different statutes of limitation[s] for false light and defamation cases could undermine the effectiveness of limitations on defamation claims. Therefore, we hold that false light claims are subject to the statutes of limitation[s] that apply to libel and slander. * * *

*Id.* at 648.

{¶ 40} The Supreme Court of Ohio did not consider the statute of limitations issue in *Welling,* but the approach *Stainbrook, Murray*, and the other federal cases followed is

---

St.3d 464, 2007-Ohio-2451, 866 N.E.2d 1051, at ¶ 58, quoting Restatement of the Law 2d, Torts, Section 652E(b) (2007).

[5] Another ground, not related to the limitations issue, was that "to the extent it would allow recovery beyond that permitted in actions for libel or slander, [recognition of false light] would tend to add to the tension already existing between the First Amendment and the law of torts in cases of this nature.' " *West* at 645, quoting *Renwick*, 310 N.C. 312, 312 S.E.2d at 412.

logical. As a result, we will apply it in this case, with the issue being whether the allegations supported both a claim of defamation and false light. We conclude that, in this case, they did.

{¶ 41} Regarding a false light claim:

One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of privacy if (a) the false light in which the other was placed would be highly offensive to a reasonable person and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Welling*, 113 Ohio St.3d 464, 2007-Ohio-2451, 866 N.E.2d 1051, at syllabus, adopting Restatement of the Law 2d, Torts (1977), Section 652E.

{¶ 42} Comment a to Section 652E states, however, that "[t]he form of invasion of privacy covered by the rule stated in this Section does not depend upon making public any facts concerning the private life of the individual. On the contrary, it is essential to the rule stated in this Section that the matter published concerning the plaintiff is not true. The rule stated here is, however, limited to the situation in which the plaintiff is given publicity." *Id.* The Supreme Court of Ohio noted this in *Welling*, stressing that:

Will a recognition of false-light invasion of privacy result in a parade of persons with hurt feelings clogging our courthouses? There is no indication that that scenario is the case in the states that already recognize false-light claims. The requirements imposed by the Restatement make a false-light claim difficult to prove.

First, the statement made must be untrue. Second, the information must be "publicized," which is different from "published * * *."

*Welling* at ¶ 51-52.

{¶ 43} Concerning defamation, this tort "occurs when a publication contains a false statement 'made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession.' " *Am. Chem. Soc. v. Leadscope, Inc.*, 133 Ohio St.3d 366, 2012-Ohio-4193, 978 N.E.2d 832, ¶ 77, quoting *Jackson v. Columbus*, 117 Ohio St.3d 328, 2008-Ohio-1041, 883 N.E.2d 1060, ¶ 9. (Other citation omitted.) " 'To establish defamation, the plaintiff must show (1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault in publishing the statement.' " *Id.*, quoting *Pollock v. Rashid*, 117 Ohio App.3d 361, 368, 690 N.E.2d 903 (1st Dist.1996).

{¶ 44} Here, Harvey's claims with respect to both false light and defamation were based on the dissemination of alleged "false" statements of fact about Harvey in an online course. *See* Complaint, ¶ 14, 16, 19 ("Facts Relevant to All Claims"); ¶ 24, 25, and 26 (False Light); and ¶ 31, 32, 33, and 35 (Defamation Per Se and Per Quod). Because the allegations in this case could support both defamation and false light claims, the trial court did not err in applying the one-year defamation statute of limitations to this case. Again, since the action was concededly not initiated within that time period, Harvey's false light claim was barred.

**{¶ 45}** Based on the preceding discussion, the First Assignment of Error is overruled.

## II. Statutory Name Appropriation

**{¶ 46}** Harvey's Second Assignment of Error states that:

The Trial Court Erred in Finding That the Appellees Are Entitled to Summary Judgment on Harvey's Claims for Statutory Name Appropriation.

**{¶ 47}** Under this assignment of error, Harvey contends that the trial court erred in concluding that her claim was not the type of claim covered by R.C. 2741.02. Harvey further asserts that the trial court erred in finding statutory exemptions by its construction of terms like "audiovisual work" and "account" and by finding that her name lacked commercial value to the Jordans. In addition, Harvey argues that she has a common-law right of privacy, which prevented the unauthorized use of her name, likeness, or identity.

**{¶ 48}** The trial court's decision was based on three points: (1) as the magistrate found, "the slides do not use Plaintiff's persona in promotion, advertising, or marketing a product; they are informative and newsworthy; * * * (2) the slides were informative only and not intended to take advantage of Plaintiff for its commercial uses"; and (3) because the purpose of the statute is "to prevent persons from using the persona of public (famous) persons for their own commercial benefit," Harvey's complaint was "not the sort of claim intended to be protected pursuant to Rev. Code 2741.02 * * *." Decision Adopting, with Modifications, Magistrate's Report at p. 2-3. Again, we review the trial court's summary judgment decision de novo.

{¶ 49} R.C. 2741.02(A) provides that, "[e]xcept as otherwise provided in this section, a person shall not use any aspect of an individual's persona for a commercial purpose" for various time periods, including during the person's lifetime or for sixty years after their death.   An individual's persona may be used, however, if consent is given by a person authorized under R.C. 2741.05 to do so.   *See* R.C. 2741.02(B).

{¶ 50} As pertinent here, one of the exceptions is that "use of an aspect of an individual's persona in connection with any news, public affairs, sports broadcast, or account does not constitute a use for which consent is required under division (A) of this section."   R.C. 2741.02(D)(1).

{¶ 51} "Persona" is defined as "an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance, if any of these aspects have commercial value."   R.C. 2741.01(A).   "Commercial purpose" is further defined to mean:

[T]he use of or reference to an aspect of an individual's persona in any of the following manners:

(1) On or in connection with a place, product, merchandise, goods, services, or other commercial activities not expressly exempted under this chapter;

(2) For advertising or soliciting the purchase of products, merchandise, goods, services, or other commercial activities not expressly exempted under this chapter;

(3) For the purpose of promoting travel to a place;

(4) For the purpose of fundraising.

R.C. 2741.01(B)(1)-(4).

{¶ 52} The "right of publicity" is also defined as "the property right in an individual's persona to use the individual's persona for a commercial purpose."   R.C. 2741.01(D).

{¶ 53} R.C. 2741.06(A) provides for a private right of action by the following persons:

(1) A person or persons, including an individual whose right of publicity is at issue, who collectively own all of an individual's right of publicity, subject to any licenses regarding that right of publicity;

(2) A person, including a licensee of an individual's right of publicity, who is expressly authorized in writing by the owner or owners of an individual's right of publicity to bring a civil action;

(3) Except as otherwise expressly provided in an agreement transferring an aspect of an individual's right of publicity and subject to division (C) of this section, a person to whom ownership or any portion of ownership of an individual's right of publicity has been transferred.

{¶ 54} These statutes were enacted in 1999, and no Ohio cases have since discussed R.C. 2741.06, which created the private right of action.   There is also very little Ohio case authority regarding actions brought under R.C. 2741.02.[6]

{¶ 55} R.C. 2741.08 does specifically state that the remedies in R.C. Chap. 2741 are "in addition to any other remedies provided by state or federal law."   Thus, Harvey is correct that she had a potential common law claim for misappropriation of her name,

---

[6] In fact, only one case has applied R.C. 2741.02, and it involved a contest in which the winner had given written consent for use of her likeness.   Because this fell within a statutory exemption in R.C. 2741.02(B), the claim failed.   *Englert v. Nutritional Sciences, L.L.C.,* 10th Dist. Franklin No. 07AP989, 2008-Ohio-5062, ¶ 22.

likeness, or identity.   However, Harvey did not assert such a claim in her complaint; she only raised false light and a statutory violation of R.C. 2741.02.   Complaint at p. 7-8.   Therefore, whether Harvey had a potential common law claim is irrelevant.

{¶ 56} Turning to R.C. 2741.02, we agree that Harvey was not required to have "celebrity status" to recover.   *See Roe v. Amazon.com*, 170 F.Supp.3d 1028, 1033 (S.D.Ohio 2016), *aff'd*, 14 Fed.Appx. 565, 568 (6th Cir.2017), citing *James v. Bob Ross Buick, Inc.*, 167 Ohio App.3d 338, 2006-Ohio-2638, 855 N.E.2d 119 (2d Dist.). [7] However, that was not all the trial court relied on.   The court cited our decision in *James*, the appellate decision in *Amazon,* and the decision in *Landham v. Lewis Galoob Toys, Inc.*, 227 F.3d 619, 624 (6th Cir.2000).   Decision Adopting, with Modifications, Magistrate's Report at p. 2-3.   Furthermore, the court recited additional grounds in its decision.

{¶ 57} *James* dealt with a common law claim for "invasion of privacy (misappropriation of name)," rather than a statutory violation.   Nonetheless, some of our observations in the case are pertinent.

{¶ 58} After James was terminated, his employer, Bob Ross Buick, sent out letters to James's former clients.   The letters were purportedly signed by James.   *Id*. at ¶ 14 and 19.   While the trial court found that Bob Ross had misappropriated James's name, it granted summary judgment against James because he failed to present any proof of damages.   *Id*. at ¶ 14.   During our discussion of this issue, we commented that the

---

[7] This is true under the common law as well.   *See Zacchini v. Scripps-Howard Broadcasting Co.*, 47 Ohio St.2d 224, 229, 351 N.E.2d 454 (1976), *rev'd and remanded on other grounds*, 433 U.S. 562, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977); *Vinci v. Am. Can Co.,* 9 Ohio St.3d 98, 459 N.E.2d 507 (1984), paragraph two of the syllabus.

Supreme Court of Ohio had "distinguished 'the mere incidental use of a person's name and likeness, which is not actionable, from appropriation of the benefits associated with the person's identity, which is.' " *Id.* at ¶ 17, citing *Zacchini*, 47 Ohio St.2d at 229, 351 N.E.2d 454. We then stated that:

> * * * The *Zacchini* court cited with approval the Restatement of the Law 2d, Torts (1965), Section 652C, including the portion regarding the incidental use of name or likeness. That portion reads:
>
> "The value of the plaintiff's name is not appropriated by mere mention of it, or by reference to it in connection with legitimate mention of his public activities; nor is the value of his likeness appropriated when it is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity. No one has the right to object merely because his name or his appearance is brought before the public, since neither is in any way a private matter and both are open to public observation. It is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or the likeness that the right of privacy is invaded."

*James*, 167 Ohio App.3d 338, 2006-Ohio-2638, 855 N.E.2d 119, at ¶ 17-18. *See also Bosley v. Wildwett.com*, 310 F.Supp.2d 914, 920 (N.D.Ohio 2004), quoting *ETW Corp. v. Jireh Publishing, Inc.*, 332 F.3d 915, 928 (6th Cir.2003) (" 'The right of publicity is an intellectual property right of recent origin which is the inherent right of every human being to control the commercial use of his or her identity.' "), and *Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831, 835 (6th Cir.1983) ("The right of publicity has

developed to protect the commercial interest of celebrities in their identities. The theory of the right is that a celebrity's identity can be valuable in the promotion of products, and the celebrity has an interest that may be protected from the unauthorized commercial exploitation of that identity.")

{¶ 59} In *Landham*, the court stressed that because case law on the right of publicity, which is a right of protection from appropriation of some element of an individual's personality for commercial exploitation, * * * * is exceedingly rare, * * * and because of the general constitutional policy of maintaining uniformity in intellectual property laws, * * * courts typically give attention to the entire available body of case law when deciding right of publicity cases."   *Landham*, 227 F.3d at 622.

{¶ 60} The plaintiff in *Landham* was a "fringe actor" who sued after an action figure of a character he played in the movie *Predator* was marketed without his permission.   *Id.* at 621. In discussing the claim, the court commented that "[t]he right of publicity is designed to reserve to a celebrity the personal right to exploit the commercial value of his own identity."   *Id.* at 624.   While agreeing that the plaintiff "correctly argues that he need not be a national celebrity to prevail," the court stressed that, however, "in order to assert the right of publicity, a plaintiff must demonstrate that there is value in associating an item of commerce with his identity."   *Id.*   Specifically, a plaintiff must show "significant 'commercial value.' "   *Id.*, quoting *Cheatham v. Paisano Publications, Inc.*, 891 F.Supp. 381, 386 (W.D.Ky.1995).

{¶ 61} In *Cheatham*, the court commented that "the best rule is that the remedy available in right of publicity claims belongs to those whose identity has commercial value. Commercial value may be established by proof of (1) the distinctiveness of the identity

and by (2) the degree of recognition of the person among those receiving the publicity. * * * In order to succeed in her claim, Plaintiff must have a notoriety which is strong enough to have commercial value within an identifiable group." *Id.* at 386-387.

{¶ 62} As we mentioned, there are no pertinent Ohio cases dealing with R.C. 2741.02. Federal authority interpreting R.C. 2741.02 is also very limited. As an example, in *Ohio State Univ. v. Skreened Ltd.*, 16 F.Supp.3d 905 (S.D.Ohio 2014), the University sued the defendants on several grounds, including that they had violated R.C. 2741.02(A) by using Urban Meyer's name and likeness, without permission, on t-shirts that they were selling. *Id.* at 916. The court granted summary judgment against the defendants, noting that "[t]he evidence indicates that Meyer assigned his rights of publicity and persona to Plaintiff, which in turn licenses the persona to authorized licensees who sell t-shirts. The evidence also indicates that Defendants are not authorized licensees but are nonetheless engaged in offering for sale t-shirts bearing Meyer's name, image, and likeness." *Id.*

{¶ 63} In another federal case involving R.C. 2741.02, the plaintiff and defendant had entered into a contract in 2002, pursuant to which the plaintiff would model ethnic hair accessories for an upcoming magazine shoot. The contract prohibited the defendant from using the photos in any product packaging. Many years later, the plaintiff saw packaged products using her photos and sued. *Stewart v. M & M Headgear, Inc.*, N.D.Ohio No. 5:14-CV-857, 2015 WL 1423560, *1 (Mar. 27, 2015).

{¶ 64} In concluding that the plaintiff had stated a claim and would survive a motion to dismiss, the trial court commented that "[t]he photographs of [plaintiff] had commercial value in 2002 when [defendant] paid hundreds of dollars for them to be used in a

magazine, and they have commercial value in being placed on product packaging in 2015. Product packaging has an inherent commercial purpose of encapsulating the product, informing the prospective purchaser of its features, and, in [plaintiff's] case, visually depicting the product in use." *Id.* at *6.

{¶ 65} Applying the principles in the above cases, we agree that Harvey did not have to have "celebrity" status. However, Harvey failed to present any evidence that her name had significant value or, indeed, any commercial value. To the contrary, Harvey has repeatedly asserted that she was not a public figure or even a limited public figure, but merely "sold a house to a private buyer in a private sale." Response to Motion for Summary Judgment, p. 12. *See also* Appellant's Brief, p. 11, and Appellant's Reply Brief, p. 10 (stating that "[t]he use of Harvey's full name is not of general interest and has no newsworthy value * * * .") Furthermore, the use was incidental; Harvey was mentioned in only three slides of a 200-page presentation.

{¶ 66} Even if this were otherwise, however, R.C. 2741.09 provides various exemptions to liability under R.C. Chap. 2741, and these exemptions provide additional reasons for the trial court's decision. As relevant here, R.C. 2741.09(A) states that:

This chapter does not apply to any of the following:

(1)(a) A literary work, dramatic work, fictional work, historical work, audiovisual work, or musical work regardless of the media in which the work appears or is transmitted, other than an advertisement or commercial announcement not exempt under division (A)(1)(d) of this section;

(b) Material that has political or newsworthy value;

* * *

(3) The use of an aspect of an individual's persona in connection with the broadcast or reporting of an event or topic of general or public interest;

{¶ 67} The decisions of the magistrate and trial court invoke these exemptions by stating that "the slides do not use Plaintiff's persona in promotion, advertising, or marketing a product; they are informative and newsworthy; * * *" and that "the slides were informative only and not intended to take advantage of Plaintiff for its commercial uses." We agree with these conclusions.

{¶ 68} As we indicated, there is little authority interpreting R.C. Chap. 2741. Since the statutory scheme involves the right of publicity, we can appropriately look to the entire available body of case law." *Landham*, 227 F.3d at 622.

{¶ 69} Regarding the common law "right to publicity," which was recognized in *Zacchini*, 47 Ohio St.2d 224, 351 N.E.2d 454, "[t]here are few Ohio decisions defining the contours of the right of publicity in the aftermath of *Zacchini*." *ETW Corp.*, 332 F.3d at 929. According to the Sixth Circuit Court of Appeals, "[t]he elements of a Lanham Act [15 U.S.C. 1125(a)] false endorsement claim are similar to the elements of a right of publicity claim under Ohio law. In fact, one legal scholar has said that a Lanham Act false endorsement claim is the federal equivalent of the right of publicity." (Citation omitted.) *Id.* at 924.

{¶ 70} The Sixth Circuit Court of Appeals noted that the Supreme Court of Ohio had relied heavily on Restatement of the Law 2d, Torts, Section 652 when it adopted the right of publicity, and in fact, had quoted the entire text of Section 652(C), and Comments a-c. *Id.* at 930, citing *Zacchini* at 230. The court then observed that while the right of publicity had originally been treated as a branch of the right of privacy and had been

included in the Invasion of Privacy chapter in the Restatement of Torts, "[i]n 1995, the American Law Institute transferred its exposition of the right of publicity to the restatement (Third) Of Unfair Competition, Chapter 4, § 46, in a chapter entitled 'Appropriation of Trade Values.'" According to the court:

The current version of the Restatement (Third) Of Unfair Competition defines the right of publicity as follows:

"Appropriation of the Commercial Value of a Person's Identity: The Right of Publicity

One who appropriates the commercial value of a person's identity by using without consent the person's name, likeness, or other indicia of identity for purposes of trade is subject to liability for the relief appropriate under the rules stated in §§ 48 and 49."

* * *

In § 46, Comment c, Rationale for Protection, the authors of the Restatement suggest that courts may justifiably be reluctant to adopt a broad construction of the right.

The rationales underlying recognition of a right of publicity are generally less compelling than those that justify rights in trademarks or trade secrets. The commercial value of a person's identity often results from success in endeavors such as entertainment or sports that offer their own substantial rewards. Any additional incentive attributable to the right of publicity may have only marginal significance. In other cases the commercial

value acquired by a person's identity is largely fortuitous or otherwise unrelated to any investment made by the individual, thus diminishing the weight of the property and unjust enrichment rationales for protection.   In addition, the public interest in avoiding false suggestions of endorsement or sponsorship can be pursued through the cause of action for deceptive marketing.   Thus, courts may be properly reluctant to adopt a broad construction of the publicity right.   *See* § 47.

*ETW Corp.*, 332 F.3d at 930, quoting Restatement of the Law 3d, Unfair Competition, at Section 46.[8]

{¶ 71} The Sixth Circuit Court of Appeals went on to state, as indicated in the Restatement, that "[i]n § 47, Comment c, the authors of the Restatement note 'The right of publicity as recognized by statute and common law is fundamentally constrained by the public and constitutional interest in freedom of expression.'   In the same comment, the authors state that *'[t]he use of a person's identity primarily for the purpose of communicating information* or expressing ideas is not generally actionable as a violation of the person's right of publicity."   (Emphasis added.)   *Id.*

{¶ 72} Although *ETW Corp.* and the Restatement both deal with common law, the expressed Restatement principles are consistent with the exemptions in R.C.

---

[8] In *ETW Corp.*, the court further stated its belief that "the courts of Ohio would follow the principles of the Restatement in defining the limits of the right of publicity. The Ohio Supreme Court's decision in *Zacchini* suggests that Ohio is inclined to give substantial weight to the public interest in freedom of expression when balancing it against the personal and proprietary interests recognized by the right of publicity."   *ETW Corp.,* 332 F.3d at 931.

2741.09)(A)(1)(a)-(b, and (3). The Restatement and R.C. 2741.09 also offer consistent protection for affected parties, as the Restatement says that users are not protected "if the name or likeness is used solely to attract attention to a work that is not related to the identified person, and the privilege may be lost if the work contains substantial falsifications." *Id.* at 930-931, citing Restatement of the Law 3d, Unfair Competition, at Section 46. Ohio's statute is less specific, but R.C. 2741.09(B) does say that R.C. Chap. 2741 "does not affect rights or privileges recognized under the Ohio Constitution or United States Constitution."

{¶ 73} Furthermore, the transfer of the right to publicity from invasion of privacy to the section of the Restatement dealing with unfair competition implies that the tort's primary focus is the value of a person's name, vis-à-vis his or her ability to market it for commercial purposes. Such a focus is also reflected in the definition of those who may pursue a private right of action under R.C. Chap. 2741. For example, R.C. 2741.06(A)(1) grants the right to "[a] person or persons, including an individual whose right of publicity is at issue, who collectively *own* all of an individual's right of publicity, subject to any *licenses* regarding that right of publicity." (Emphasis added.) Including economic indicators like collective ownership and licensing indicates that litigants would need to show that their name, identity, or likeness has commercial value.

{¶ 74} Admittedly, the court stated in *Zacchini* that "the use or benefit need not necessarily be commercial." *Zacchini*, 47 Ohio St.2d 224, 351 N.E.2d 454, at paragraph two of the syllabus. However, the "use" of a name, likeness, or identify differs from its "value." Even if this were otherwise, the statute is in question here, not the common law right of publicity (invasion of privacy).

{¶ 75} In any event, after reviewing the record and the applicable law, we agree with the trial court that no genuine issues of material fact existed and that Appellees were exempt from the application of R.C. Chap. 2741. There was no dispute below that the slides contained material that had "newsworthy value." R.C. 2741.09(A)(1)(b). As noted, Harvey, herself, indicated that the *Seitz* case had been reported in various publications.

{¶ 76} Harvey's persona was also used "in connection with the * * * reporting of an event or topic of general or public interest." R.C. 2741.09(A)(3). Additionally, Appellees were not required to obtain Harvey's consent because they used Harvey's persona "in connection with any news, public affairs, * * * or account * * *." R.C. 2741.02(D)(1). Notably, Appellees' use did not have to quality under more than one exemption in R.C. 2741.09(A) and did not have to qualify for both an exception in R.C. 2741.02 and an exemption in R.C. 2741.09. In other words, any one of these grounds would suffice to preclude liability.

{¶ 77} Based on the preceding discussion, the Second Assignment of Error is overruled.


IV. Qualified Privilege

{¶ 78} Harvey's final assignment of error is that:

> The Trial Court Erred in Asserting That Qualifying Privilege Could Protect Appellees' Conduct.

{¶ 79} Under this assignment of error, Harvey contends that the trial court erred in concluding that Appellees were entitled to a qualified privilege under R.C. 2317.05 in light

of the fact that the third slide (regarding the termite case verdict) accurately stated that Harvey had not been honest.

**{¶ 80}** R.C. 2317.05 states that:

> The publication of a fair and impartial report of the return of any indictment, the issuing of any warrant, the arrest of any person accused of crime, or the filing of any affidavit, pleading, or other document in any criminal or civil cause in any court of competent jurisdiction, or of a fair and impartial report of the contents thereof, is privileged, unless it is proved that the same was published maliciously, or that the defendant has refused or neglected to publish in the same manner in which the publication complained of appeared, a reasonable written explanation or contradiction thereof by the plaintiff, or that the publisher has refused, upon request of the plaintiff, to publish the subsequent determination of such suit or action.

**{¶ 81}** We decline to address this assignment of error for two reasons: (1) given the disposition of the other two assignments of error, which uphold dismissal of Harvey's action, this assignment of error is moot; and (2) the finding to which Harvey refers is one made by the magistrate. In fact, the trial court specifically declined to address the issue based on its findings concerning the statute of limitations issue and the claim brought under R.C. 2741.02. *See* Decision Adopting, with Modifications, Magistrate's Report at p. 3. Accordingly, the Third Assignment of Error is overruled as moot.

## V. Conclusion

**{¶ 82}** Harvey's First and Second Assignments of Error having been overruled,

and her Third Assignment of Error having been overruled as moot, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HALL, J., concurs.

FROELICH, J., concurs:

{¶ 83} I do not fully agree with the majority's discussion of the holdings of our opinion in *Seitz v. Harvey*, 2d Dist. Montgomery No. 25867, 2015-Ohio-122. Regardless, the statements and representations made by the defendants, no matter how false, misleading, or incomplete, were made more than one year before the filing of suit, and the false light invasion of privacy claim was barred by the statute of limitations.


Copies sent to:

Pamela L. Pinchot
Mark S. Maddox
Hon. Dale A. Crawford, Visiting Judge